NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PATRICIA FRAZIER, | : | |
| | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | Civil Action No. 03-CV-2953 (DMC) |
| JO ANN B. BARNHART, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | | |
| Defendant. | | |

DENNIS M. CAVANAUGH, U.S.D.J.:

## I. BACKGROUND

This matter comes before the Court upon an application by Patricia Frazier ("Plaintiff"), to overturn the final determination of Jo Ann B. Barnhart, the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for disability insurance benefits.  Oral argument was not heard pursuant to Rule 78 of the Federal Rules of Civil Procedure.  The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, the final decision of the Commissioner is **affirmed**.

## II. DISCUSSION

### A. Procedural History

Plaintiff applied for disability insurance benefits on February 11, 1999, alleging disability

as of June 5, 1996, due to pulmonary insufficiency, asthma, depression, and anxiety. (Transcript. ("Tr.") 103).  That application was denied on August 13, 1999, and Plaintiff's subsequent request for reconsideration was also denied. (Tr. 75-81).  On April 10, 2000, Plaintiff filed an application for a hearing before an Administrative Law Judge ("ALJ"), which was held on June 2, 2000. (Tr. 84).  In a decision marked April 27, 2001, the ALJ determined Plaintiff was not disabled.  On June 26, 2001, Plaintiff requested review by the Appeals Council. (Tr. 86).  The Appeals Council remanded the case to the ALJ on September 7, 2001, for a new hearing on grounds that Plaintiff was never allowed the opportunity to present her testimony and therefore never had a hearing. (Tr. 88-90).  The hearing was held on May 6, 2002, but was subsequently adjourned for testimony from a vocational expert. (Tr. 32-40).  The hearing was resumed on July 9, 2002, and on July 15, 2002, the ALJ held Plaintiff was not entitled to Disability Benefits. (Tr. 10-19).  The Appeals Council denied Plaintiff's request to review this decision and on April 17, 2003, Plaintiff filed an appeal before this Court. (Tr. 5-6.)

## B. Statement of Facts

Plaintiff is a fifty-five year-old woman with a twelfth-grade education.  She alleges disability as of February 11, 1999, due to pulmonary insufficiency, asthma, depression, and anxiety. (Tr. 45-49).  Plaintiff is a single mother with two children who lives with her sister and nephew in a private home. (Tr. 212).  She does yard work, laundry and cares for her children. (Id.)  Plaintiff smokes four to five cigarettes a day, but denies use of alcohol or any recreational drugs. (Id.)

## 1. Plaintiff's Medical History

The earliest medical records Plaintiff has submitted to this Court are from earliest her stay

at St. Barnabas Medical Center in 1997. (Tr. 127).  Plaintiff was hospitalized after being
involved in a house fire on September 4, 1997.  (Tr. 128).  She was incubated at the scene and
was awake, responsive, and cooperative upon arrival at the emergency room (Id.)  At the
emergency room Plaintiff was diagnosed with severe smoke inhalation secondary to house fire.
(Tr. 128).  On September 11, 1997, Plaintiff underwent a tracheotomy, which was removed on
September 20, 1997. (Id.)  After the removal, Plaintiff tolerated her diet well, the tracheotomy
site healed properly, and there was no dysphagia.  (Id.)  Plaintiff was discharged on September
24, 1997, after it was determined that her chest was clear from ascultation and all her x-rays were
normal.  (Id.)

On August 31, 2000, the ALJ ordered Plaintiff to be examined by Dr. Anthony Cincotta.
(Tr. 212).  Plaintiff informed Dr. Cincotta that she contracted pneumonia and was diagnosed with
asthma in 1995.  (Id.)  She claimed she still suffered from shortness of breath. (Id.)  Plaintiff also
informed the doctor that she has a history of high blood pressure, even though it is currently
normal and she does not take any medication for it. (Id.)  Plaintiff does use a Proventil inhaler, an
Intal inhaler and an Azmacort inhaler as needed. (Id.)  Due to lack of health insurance, Plaintiff's
church often fills her perscriptions and she has also borrowed medication from a neighbor who
also suffers from asthma. (Id.)

Dr. Cincotta's evaluation showed Plaintiff's lungs were clear with no rhonchi, wheezing,
or rales. (Tr. 213).  Dr. Cincotta diagnosed Plaintiff with a history of asthma, status post
tracheotomy secondary to severe smoke inhalation, and history of high blood pressure. (Id.)
Plaintiff's pulmonary function test showed moderate restriction before administration of
bronchodilators and mild restrictive disease after administration of bronchodilators. (Tr. 221).

-3-

On February 19, 2002, Dr. Melvin A. Bernstein performed an adult intelligence exam on Plaintiff.  (Tr. 222-227).  Dr. Bernstein observed Plaintiff had good hygiene, normal motor behavior, tense posture and appropriately focused eye contact. (Tr. 223).  Plaintiff displayed good attention and concentration and did not evidence significant emotional distress. (Id.) Dr. Bernstein determined Plaintiff was somewhat depressed. (Tr. 222).  She spoke wistfully and tearfully about the loss of her mother and sister, and was also depressed because she was "used to working."  (Id.)  The results of the WAIS-III revealed a Verbal Scale IQ of eighty-two (82), a Performance Scale IQ of seventy-two (72), and a Full Scale IQ of seventy-five (75). (Tr. 223).  According to Dr. Bernstein, Plaintiff is able to follow and understand simple directions and instructions, perform rote tasks under supervision, relate adequately with others, and deal appropriately with stress. (Tr. 224).  Dr. Bernstein's diagnoses were depressive disorder on Axis I, Borderline intellectual functioning on Axis II, and Chronic bronchial asthma with history of respiratory arrest on Axis III. (Id.)  Dr. Bernstein gave a "fair" prognosis to Plaintiff regarding her employability given her latent intelligence, presentation, and motivation (Tr. 225)  In a Medical Source Statement from February 19, 2002, Dr. Bernstein assessed Plaintiff's abilities to do work-related activities. (Tr. 226).  Plaintiff has no impairment in her ability to understand and remember short simple instructions or to carry those instructions out. (Id.)  Plaintiff has moderate restrictions on her ability to understand, remember, and carry out detailed instructions.  (Id.)  Plaintiff also has moderate restrictions on her ability to make judgements on simple work related decisions. (Id.)

## 2. Plaintiff's Work Experience and Vocational Skills

Plaintiff's testimony indicates that her last employer was Bell Atlantic. (Tr. 45).  Plaintiff was employed as a service representative for nineteen years and held that position until she was terminated in June 1996.  (Id.)  The job required her to handle customers' complaints with their service, including questions about the phone itself, billing, moving services, and disconnecting services.  (Tr. 45-46.)  During the course of the day, Plaintiff used a computer and spoke on the telephone while seated. (Id.)  Plaintiff's workday began at 8:30 in the morning and concluded at 4:30 in the afternoon; she was allowed one fifteen minute break and a half-hour, to an hour, for lunch. (Tr. 47).  Plaintiff was not allowed any extra breaks or to "off the line" unless on a scheduled break. (Id.)

Plaintiff testified her asthma resulted in shortness of breath while talking on the phone. (Id.)  Plaintiff was frequently absent from work due to the asthma and other illnesses and her excessive absences were the reason for her termination. (Id.)  After leaving Bell Atlantic, Plaintiff attempted to find other work. (Tr. 55.)  Plaintiff stated she sought factory work but employers told her she was overqualified.  Her attempts to obtain work as a telephone representative also failed because of problems with her voice. (Id.)

Plaintiff alleged that her  mental and physical problems prevented her from working. (Tr. 54).  Plaintiff claimed that because of her shortness of breath she had difficulty moving quickly around the office and her memory problems slowed her down when she was helping customers. (Tr. 53). Because of her breathing and vocal problems, Plaintiff argued that working as a telephone service representative would not be possible. (Tr. 56.)

Vocational expert, Rocco Meola then testified as to Plaintiff's potential to find work

given her condition. (Tr. 58).  Mr. Meola testified that, given the Plaintiff's mental and physical problems, she would be able to find work if restricted to simple and repetitive tasks in an irritant free environment. (Id.)  Mr. Meola suggested Plaintiff work as a microfilm mounter, duplicating machine operator or folding machine operator.  (Tr. 59). Mr. Meola further testified that Plaintiff could also find work at a job that only requires a sedentary exertion level.  (Id.)  Plaintiff could work as a sales person at a parts counter, as an ampule examiner, or as an inspector of components. (Id.)   Mr. Meola also stated that in his opinion, Plaintiff would not be exposed to any pulmonary irritants while working at these types of jobs, specifically that of duplicating machine operator, and that this job would require performing only rote tasks where supervision would not be necessary. (Tr. 61-63).

## II. Discussion

### A. The Standard of Review

A review of a final decision of the Commissioner is made pursuant to 42 U.S.C. § 405(g).[1]  Sims v. Apfel, 530 U.S. 103, 106, 120 S.Ct. 2080 (2000); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Section 405(g) permits a District Court to review transcripts and records upon which a determination of the Commissioner is based.  Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000).  If supported by substantial evidence, factual findings of disability made

---

[1]  Section 405(g) provides in pertinent part:
>    Any individual, after any final decision of the Commissioner of Social Security made
>    after a hearing to which he was a party, irrespective of the amount in controversy, may
>    obtain a review of such decision by a civil action....

42 U.S.C. § 405(g)(West Supp. 2000).

by the Commissioner must be accepted as conclusive.  Plummer, 186 F.3d at 427; Knepp v.

Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995);

Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence has been

quantified as "more than a mere scintilla."  Burnett v. Commissioner, 220 F.3d 112, 118 (3d Cir.

2000); Ventura, 55 F.3d at 901 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It

"does not mean a large or considerable amount of evidence, but rather such relevant evidence as

a reasonable mind might accept to support a conclusion."  Morales, 225 F.3d at 316 (3d Cir.

2000); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487

U.S. 552, 565 (1988)).

The substantial evidence standard allows a court to review an ALJ decision, yet avoid

interference with the administrative responsibilities of the Commissioner.  Stewart v. Secretary

of Health, Educ. and Welfare, 714 F.2d 287, 290 (3d Cir. 1983); Claussen v. Chater, 950 F.Supp.

1287, 1292 (D.N.J. 1996).  The standard is "deferential and includes deference to inferences

drawn from the facts if they, in turn, are supported by substantial evidence."  Schaudeck v.

Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).  The record must be

reviewed as a whole to determine whether substantial evidence is present to support the decision

of the ALJ.  Id.

Reasonable minds can reach different conclusions following review of the evidentiary

record upon which the decision of the Commissioner is based.  Nevertheless, in such cases, the

function of a District Court is to determine whether the record, as a whole, contains substantial

evidence to support the findings of the Commissioner.  Adorno v. Shalala, 40 F.3d 43, 46 (3d

Cir. 1994); (quoting <u>Richardson</u>, 402 U.S. at 401 (1971)); <u>Schaudeck</u>, 181 F.3d at 431.  A court may not displace the choice of an administrative body "between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  <u>N.L.R.B. v. Greensburg Coca-Cola Bottling Co.</u>, 40 F.3d 669, 672-73 (3d. Cir. 1994) (quoting <u>Universal Camera Corp. v. N.L.R.B.</u>, 340 U.S. 474, 488 (1951)); <u>see also</u> <u>Hartranft</u>, 181 F.3d at 360.

Nonetheless, an ALJ is expected to do more than simply state factual conclusions. <u>Stewart</u>, 714 F.2d at 290; <u>Claussen</u>, 950 F.Supp at 1292.  Rather, an ALJ must make specific findings of fact to support his or her ultimate findings.  <u>Sykes v. Apfel</u>, 228 F.3d 259, 269 (3d Cir. 2000).   An ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when the testimony of a physician treating a claimant is rejected.  <u>Morales</u>, 225 F.3d at 320; <u>Plummer</u>, 186 F.3d at 429; <u>Wier on Behalf of Wier v. Heckler</u>, 734 F.2d 955, 961 (3d Cir. 1984); <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981).  An ALJ must also give serious consideration to the subjective complaints of pain of the claimant, even when those assertions are not fully confirmed by objective medical evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1067-68 (3d Cir. 1993); <u>Welch v. Heckler</u>, 808 F.2d 264, 270 (3d Cir. 1986).  Where a claim is supported by competent evidence, an ALJ must specifically weigh that evidence.  <u>Schaudeck</u>, 181 F.3d 429, 435 (citing <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 407 (3d Cir. 1979)).

## B.  The Five Step Sequential Evaluation

Title II[2] of the Act provides for the payment of benefits to persons who suffer from

disabilities who have made contributions to the disability insurance program.  42 U.S.C. §

423(a)(1)(D).  Title XVI of the Act, entitled Supplemental Security Income for the Aged, Blind

and Disabled,[3] provides for the payment of benefits to indigent persons who are disabled.  42

U.S.C. § 1381a.[4]

Both Titles II and XVI provide for the payment of benefits when a claimant establishes

his or her inability:

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can
> be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B); see also Schaudeck, 181 F.3d at 431.  The Act
further provides:

> an individual shall be determined to be under a disability only if his [or
> her] physical or mental impairment or impairments are of such severity
> that he [or she] is not only unable to do his [or her] previous work but
> cannot, considering his [or her] age, education and work experience,
> engage in any other kind of substantial gainful work which exists in the

---

[2]      Act of 14 Aug. 1935, Pub. L. No. 271, ch. 531, §§ 201-10
         (codified as amended 42 U.S.C. §§ 401-33).

[3]      Social Security Amendments of 1972, Pub. L. No. 92-603, §§
         1601-36, 86 Stat. 1465-93 (codified as amended at 42 U.S.C.
         §§ 1381-83d).

[4]      Because the standards of eligibility under Title II and
         judicial review thereof are virtually identical to the
         standards under Title XVI, decisions rendered under 42
         U.S.C. § 423 are also applicable to decisions rendered under
         42 U.S.C. § 1381a.  Sullivan v. Zebley, 493 U.S. 521, 525
         n.3 (1990).

national economy.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Sykes, 228 F.3d 259, 262.

In accordance with authority granted under 42 U.S.C. § 405(a), as incorporated by reference in 42 U.S.C. § 1383(d)(1), the Commissioner has promulgated regulations (the "Regulations") to give effect to and further define the provisions of the Act.  20 C.F.R. §§ 404.1520, 416.920.  The Regulations provide for a five-step sequential evaluation of the claim of an individual for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Morales, 225 F.3d at 316; Sullivan, 493 U.S. at 525; Knepp, 204 F.3d at 82; Schaudeck, 181 F.3d at 431-432.

In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a), 416.920(a).

> Substantial gainful activity is work that is both substantial and gainful ....  Substantial work activity is activity that involves doing significant physical or mental activities.  [An applicant's] work may be substantial even if it is done on a part-time basis or if [the applicant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the applicant] worked before ....  Gainful work activity is work activity that [the applicant] do[es] for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. §§ 407.1572, 416.972.  If a claimant is found to be engaged in substantial gainful activity, the claim of disability will be denied, regardless of medical condition.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. § 404.1520(b)).

If the claimant is not engaged in substantial gainful activity, the analysis of the claim proceeds to step two.  Step two, commonly known as the "severity regulation," involves a

minimum threshold determination of whether the claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment is considered severe if it is "of a magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.'"  Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982); (quoting 20 C.F.R. § 404.1520(c)).

Evidence of a "physical or mental impairment" must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner may require."  42 U.S.C. § 423(d)(5)(A).  The Commissioner, however, cannot make "speculative inferences from medical opinions;" a medical opinion may only be rejected on the basis of "contradictory medical evidence."  Plummer, 186 F.3d at 428.  When a medically determinable impairment exists that can be reasonably expected to produce pain, the intensity and persistence of symptoms must also be evaluated in order to determine what impact, if any, they have on the ability of the claimant to work.  Sweeney v. Commissioner of Social Security, No. 99-6048, slip op. at 17 (3d Cir. June 2000); (citing 20 C.F.R. § 416.929(c)(1)).

> If a claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone, consideration will also be given to such factors as the individual's daily activities; the location, duration, and intensity of the individual's pain; precipitating and aggravating factors; the type, and side effects of medication; treatment received for the relief of pain; and any other measures used for pain relief.

Id. (referencing 20 C.F.R. § 416.929(c)(3); Social Security Ruling 96-7p)).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or

handling;" "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers, and usual work situations;" and "dealing with changes in a routine work setting." Yuckert, 482 U.S. at 141; (quoting, 20 C.F.R. § 404.1521(b)).

An ALJ need only consider medical evidence in step two, without regard to vocational factors such as the age, education, or work experience of the claimant. Id.; (citing, 20 C.F.R. §§ 404.1520(c), 416.920(c)). In step two of the analysis, the claimant must make the threshold showing that his or her impairments are sufficiently severe to satisfy this standard. Yuckert, 482 U.S. at 146 n.5. If a claimant fails to make this showing, he or she is ineligible for DIB or SSI benefits. Id. at 148; Santise, 676 F.2d at 927.

If the claimant is not engaged in substantial gainful activity and has a severe impairment, the evaluation proceeds to step three. Step three requires a determination of "whether the impairment is equivalent to one of a number of listed impairments [(the "Listed Impairments")] that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141. "If the impairment meets or equals [a] [L]isted [I]mpairment [], the claimant is conclusively presumed to be disabled." Id.; see also 20 C.F.R. §§ 404.1520(d), 416.920(d); Schaudeck, 181 F.3d at 432.

If a claimant does not suffer from a Listed Impairment or its equivalent, the analysis proceeds to steps four and five. Under these steps, "the Commissioner must determine whether the claimant retains the ability to perform either his [or her] former work or some less demanding employment." Zebley, 493 U.S. at 535 (quoting, Heckler v. Campbell, 461 U.S. 458, 469 (1983)); see also Adorno, 40 F.3d. at 46; Williams, 970 F.2d at 1187.

Step four requires an ALJ to consider whether the claimant retains the residual functional

-12-

capacity to perform work he or she performed in the past.  20 C.F.R. §§ 404.1520(e), 416.920(e);

Schaudeck, 181 F.3d 431.  Residual functional capacity is defined as what the claimant "can still

do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a).  An ALJ must

evaluate the physical and mental requirements of past work experience of the claimant in

determining the residual functional capacity.  Knepp, 204 F.3d at 82; Velazquez v. Heckler, 802

F.2d 680, 682 (3d Cir. 1986); 20 C.F.R. §§ 404.1520(e), 416.920(e).

        "At step four, vocational factors [such as age, education, and work experience] are not

considered in determining whether or not a claimant retains the residual functional capacity to

perform past relevant work."  Williams, 970 F.2d at 1887; see also 20 C.F.R. §§ 404.1560(b),

416.960(b).  If the claimant is able to meet the demands of his or her past work, then he or she is

not disabled within the meaning of the Act.  Yuckert, 482 U.S. at 141; Schaudeck, 181 F.3d at

432; Adorno, 40 F.3d at 46.  At step four, as with the previous steps, the claimant bears the

burden of proof.  Yuckert, 482 U.S. at 146 n.5; Adorno, 40 F.3d. at 46.

        If a claimant demonstrates an inability to resume his or her former occupation, the

evaluation moves to step five.  At this final stage, the burden of proof shifts to the

Commissioner, who must demonstrate the claimant is capable of performing other available

work in order to deny a claim of disability.  Morales, 225 F.3d at 316; Yuckert, 482 U.S. at 146

n.5; Adorno, 40 F.3d at 46.  Further, a determination of disability by an ALJ at step five must be

based upon the age, education, work experience, and residual functional capacity of the claimant.

20 C.F.R. § 404.1520(f), 416.920(f); Schaudeck, 181 F.3d at 432.  The ALJ must also analyze

the cumulative effect of all of the impairments of the claimant.  20 C.F.R. §§ 404.1545, 416.945.

### C. ALJ O'Leary's Decision

        In step one of the five step analysis, ALJ O'Leary concluded Plaintiff had not engaged in

any substantial gainful activity since June 5, 1996. (Tr. 14).  Accordingly, the ALJ proceeded to step two.  As discussed above, a claimant must demonstrate that her impairments are sufficiently severe in step two.  Yuckert, 482 U.S. at 142 n.5.  If a claimant fails to make this threshold showing, she is ineligible for DIB or SSI.  Id. at 148; Santise, 676 F.2d at 927.  Here, ALJ O'Leary determined Plaintiff carried this burden with his finding that the medical evidence on the record demonstrating Plaintiff suffered from asthma and depression.  (Id.)  The ALJ also found that Plaintiff's injuries resulted in significant work related limitations.  (Id.)  For these reasons, ALJ O'Leary found Plaintiff carried the burden required to move past the step two analysis to step three.

Step three requires the ALJ to determine "whether the impairment is equivalent to one of a number of listed impairments [(the "Listed Impairments")] that the Commissioner acknowledges to be so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 141.  "If the impairment meets or equals [a] [L]isted [I]mpairment, the claimant is conclusively presumed to be disabled."  Id.; see also, 20 C.F.R. §§ 404.1520(d), 416.920(d).  Here, the ALJ found Plaintiff had no impairment that meets the criteria listed in the Regulations.  (Id.)  The ALJ determined that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment."  (Id.)  The ALJ noted in his decision that he gave particular consideration and scrutiny to impairments found in Listings 3.00 and 12.00 which concern respiratory ailments and mental disorders. (Id.)

In reviewing Plaintiff's medical records, ALJ O'Leary observed that although Plaintiff was admitted to St. Barnabas Medical Center in September 1997, she was discharged without any respiratory difficulty. (Id.)  Her x-rays showed her chest was clear and there were no abnormalities. (Id.)  The ALJ further noted that even though the pulmonary test given by Dr.

-14-

Cincotta showed mild restrictive disease and that Plaintiff has a history of asthma, Plaintiff's score on the pulmonary test still did not meet the requirements of Listing 3.02 or 3.03. (Tr. 15).

The ALJ also considered Plaintiff's mental impairments.  ALJ O'Leary found that Plaintiff's IQ placed her in the borderline range of intellectual functioning, but her score did not meet the criteria of Listing 12.05C. (Id.)  The ALJ considered Dr. Bernstein's evaluation that Plaintiff had a depressive disorder, but also weighed the fact that Plaintiff is able to follow and understand simple instructions, perform rote tasks and that she is able to dress, bathe, manage money, do laundry and other household chores.  (Id.)

Finally, the ALJ considered Plaintiff's subjective claims, but determined they were not entirely credible. (Tr. 16).  The ALJ noted Plaintiff was fired from her job due to poor attendance and then searched for work in temporary agencies. (Id.)  The ALJ found Plaintiff's attempts to find work evidencing Plaintiff is "ready, willing and able to work." (Id.)  The ALJ found that while the Plaintiff may experience occasional shortness of breath and loss of concentration, the evidence does not support the degree of incapacitation alleged or required by the Regulations. (Id.)

At step four of the analysis, the ALJ found that because Plaintiff's job as a telephone service representative required her to remember and carry out detailed instructions, she would be incapable of returning to that type of work.  (Tr. 17.)  The ALJ determined Plaintiff has the residual functional capacity to perform a job requiring a minimal exertion level. (Id.)  Citing the medical reports of Dr. Cincotta and Dr. Bernstein, ALJ O'Leary further noted that her capacity for this type of work is diminished by her inability to work around dust, smoke and pulmonary irritants. (Id.)

Finally, at step five of the analysis, the burden of proof shifts to the Commissioner.  At

this step, the ALJ found that Plaintiff is capable of finding work that exists in significant numbers in the national economy given her limitations. (Id.)  The ALJ cited the testimony of Mr. Rocco Meola, who stated that, given the Plaintiff's specific work restrictions, she would be capable of making a vocational adjustment to other work, such as microfilm monitor or duplicating machine operator. (Id.)  Based on the evidence as a whole, the ALJ found that the Plaintiff is not disabled within the meaning of the Social Security Act.

### III. Analysis

In this case, the findings of the ALJ were supported by substantial evidence.  There is significant evidence in the records showing that the Plaintiff is not disabled.  The medical reports by Dr. Cincotta and Dr. Bernstein demonstrate that Plaintiff's impairments do not rise to the levels of those in the Listings.  ALJ O'Leary provided an adequate, reasoned explanation for his analysis and the testimony of the vocational expert was enough to carry the Commissioner's burden at the final step.

### A. Plaintiff's Cognitive Impairment Failed to Meet the Requirements of the Regulations

Plaintiff argues the ALJ ignored her cognitive impairment at the second step of the sequential analysis. (Plaintiff's Brief in support of Motion to Remand ("Pl. Br.") at 11).  Plaintiff claims that because her Performance IQ score of seventy two places her in the borderline intellectual range of functioning, she should be considered to have a cognitive impairment. (Id.) The Regulations require either a verbal, performance or full scale IQ of fifty nine or less for a person to qualify as mentally incapacitated.  Those requirements are lessened only when an additional impairment exists and the score is seventy or below.  (Listing 12.05).  Plaintiff's score of seventy two does not meet the requirement of Listing 12.05C.  Therefore she does not have a cognitive impairment under the Code.

-16-

Furthermore, the Regulations do not provide for "borderline" conditions as Plaintiff argues. Listing 12.00C provides that a person may be considered to have a mental impairment if they meet certain standards. Here, Plaintiff readily admits that her IQ score does not meet the requirements set forth in the regulations. Plaintiff argues that the ALJ "avoids the messy labor of thinking, analyzing and ultimately awarding benefits by simply pretending that Plaintiff doesn't suffer a cognitive deficit." The Court can not say that the Plaintiff has a mental impairment when none exists under the Regulations.

The ALJ also rejected Plaintiff's subjective complaints of impairment because Plaintiff's complaints were not credible. The ALJ considered her testimony that she looked for work in temporary agencies and found that it contradicted her statement that she was unable to work. (Tr. 16). The ALJ also found that Plaintiff's asthma did not seem to affect her daily activities in any way. (Id.) This Court concurs and finds it difficult to comprehend that Plaintiff is able to use public transportation, do general housekeeping, and manage her money, but not capable of working as a duplicating machine operator or some other similar vocation. The ALJ did not ignore Plaintiff's cognitive impairment at step two of the five-step sequential evaluation because no impairment exists that meets the degree specified in the Listing.

### B. The ALJ's Step Three Analysis

Next, Plaintiff argues the ALJ did not provide a reasoned or articulate argument when he rejected Plaintiff's claim because he did not compare Plaintiff's condition to Listing 3.03,12.04, or 12.05. The ALJ stated in his decision, "[p]articular scrutiny was given to the claimant's condition in light of Listing 3.00, the respiratory system; and Listing 12.00, mental disorders." (Tr. 14). An ALJ is not required to cite to every specific sub-Listing in order to make a reasoned and articulate finding. The ALJ's stated consideration of Listing 3.00 and 12.00 encompasses the

-17-

sub-listings that Plaintiff complains were ignored.  Plaintiff also argues, "there is little question that Plaintiff is medically equivalent to 12.05C." (Pl. Br. at 23).  Plaintiff has a performance scale IQ of seventy two and Listing 12.05C requires a score below seventy, combined with an additional impairment to sustain a finding of cognitive impairment. (Listing 12.05).  Plaintiff has not cited any evidence in the record to dispute that finding.

Plaintiff continues by arguing that "the problem with this 'analysis' is that it doesn't tell the truth and it doesn't observe the regulations... because here a Social Security consultative examiner did in fact mention findings equivalent in severity." (Pl. Br. at 23).  In fact it is the Plaintiff who is being less than truthful.  First, while Dr. Bernstein did diagnose the Plaintiff with depression, he did not mention any presence of the depression elements required in Listing 12.04A, such as anhedonia, sleep disturbance, feelings of worthlessness or marked restriction in daily living or social functioning. (Tr. 224). While Plaintiff does claim she has difficulty concentrating, those claims are entirely subjective and were not diagnosed by Dr. Bernstein.  (Id.) Second, while Plaintiff insists she suffers from cognitive impairment, her IQ score of seventy two is clearly not low enough to meet the requirement.  It is the Court's duty to follow and interpret the law, not to bend it in favor of a  Plaintiff who happens to come close to meeting the requirements. Finally, while the Court readily admits Plaintiff suffers from asthma, her pulmonary function does not meet the requirements described in Listing 3.03. (Tr. 221). The ALJ's consideration and analysis of the Listings did provide a reasoned and articulate finding that the Plaintiff's conditions do not meet the requirements and that finding is supported by substantial evidence.  Therefore, the ALJ's analysis under Step 3 must be affirmed.

### C. The ALJ's Step Four Analysis

The Plaintiff contends the ALJ's rationale behind his assessment of Plaintiff's residual

functional capacity fails to support his conclusion.  Plaintiff argues the ALJ simply recited the evidence and then announced a decision.  This is not true, as the ALJ stated numerous reasons for his assessment; he listed and evaluated the criteria and gave significant analysis to the Plaintiff's claims.

The ALJ considered Plaintiff's testimony regarding her asthma and other pulmonary difficulties and found that her complaints were not credible.  The ALJ noted that Plaintiff was terminated from her job due to poor attendance, not due to any disability.  (Tr. 16).  The ALJ also found that Plaintiff's statement that she looked for work in temporary agencies contradicted her claim that she is unable to work. (Id.)

The ALJ also cited the medical reports of Dr. Cincotta and Dr. Bernstein to aid in his explanation of his assessment of the Plaintiff's residual functional capacity.  (Id.)  The ALJ referred to Dr. Bernstein's evaluation that Plaintiff is able to do general housekeeping, manage money, and perform simple and repetitive tasks which led him to the finding: "while it is not doubted that the claimant may experience occasional shortness of breath... the evidence of record...fails to support the degree of incapacitation alleged."  (Id.)  The ALJ's statements concerning Plaintiff's lack of credibility and his references to the medical reports provided a sufficient rationale for his assessment of Plaintiff's residual functional capacity.

### D.  The Commissioner Carried Her Burden at Step Five

Plaintiff argues the Commissioner failed to show jobs exist in the national economy that Plaintiff could perform.  On the contrary, the vocational expert identified a number of jobs such as duplicating machine operator and parts counter that Plaintiff is physically and mentally capable of performing.  Plaintiff contends there are no jobs available that are free of smoke and other irritants. (Pl. Br. at 33).  According to Plaintiff, "the Social Security Rulings... state

-19-

explicitly that no jobs are available." (Id.)  Social Security Ruling 85-15 states,"[w]here an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because *very few* jobs environments are entirely free of irritants." (Pl. Br. at 27; citing, Social Security Ruling 85-15). The ALJ accounted for this obstacle in his hypothetical question to the vocational expert. (Tr. 58).  Mr. Meola stated that in his opinion, there are no pulmonary irritants associated with any of the jobs he suggested Plaintiff could perform. (Tr. 61). Plaintiff takes issue with the ALJ's assessment that she retains the ability to perform simple and repetitive tasks and the use of that terminology in his hypothetical questions to the vocational expert. (Pl. Br. at 28).  Plaintiff argues,"the ALJ simply washes all of this away by inventing a 'simple and repetitive task' capability found by no medical or psychiatric examiner.  Plaintiff's capability is that she can perform rote tasks, the same task over and over again." (Id.)  The Oxford Online Dictionary defines "rote" as: "in a mechanical manner, by routine, esp. by the mere exercise of memory without a proper understanding of." (http://dictionary.oed.com).  The ALJ's question to the vocational expert using the term "simple and repetitive" was proper as there is no material difference between a rote task and a "simple and repetitive" task.

Plaintiff also argues the ALJ's hypothetical questions did not consider her concentration problems. (Pl. Br. at 33).  The loss of the ability to concentrate was considered in evaluating Plaintiff's potential cognitive impairment under Listing 12.05.  Furthermore, despite Plaintiff's claims, Dr. Bernstein noted that her "attention and concentration were good."  Again, Plaintiff's claims are not entirely credible due to contradictions with her testimony and records.

Plaintiff also challenges the ALJ's assessment of her residual functional capacity on the grounds that he did not consider her need for direct "one to one" supervision. (Id. at 29).  The Court concedes that while Plaintiff is in need of supervision while working, there is nothing in

the record to support a conclusion that Plaintiff needs "one to one" supervision.  Vocational expert Rocco Meola testified that he "would not consider any of the jobs that I've given you requiring special supervision.  These are basically one or two-step operations." (Tr. 63).  Further, the Court finds that the kind of supervision ordinarily in place at the jobs offered by Mr. Meola would be sufficient so that Plaintiff could perform adequately.  A manager or department supervisor would most certainly be able to observe and direct the work of the Plaintiff so she could perform a simple and repetitive task.  Furthermore, the Court notes that Plaintiff performs rote tasks such as doing laundry and cleaning her home as part of her daily routine without supervision.

Due to the reasons stated above, this Court finds the Commissioner did carry her burden at the final step of the evaluation.  A vocational expert testified before the ALJ that a number of jobs existed in the national economy that Plaintiff could perform and the hypothetical questions posed the expert contained all limitations relevant to Plaintiff's condition.  Therefore, the ALJ's determination must be affirmed.

### IV. <u>Conclusion</u>

For the reasons stated, the finding that Plaintiff was not disabled, as the term is defined by the Act, was supported by substantial evidence in the record.  The decision of the Commissioner is affirmed and Plaintiff's Complaint is dismissed.


   S/   Dennis M. Cavanaugh          
Dennis M. Cavanaugh, U.S.D.J.

Date:       March 27, 2006
Original:   Clerk's Office
Cc:        All Counsel of Record
            File